# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **TERESA M. HUNLEY,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:11CV00050 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **CAROLYN W. COLVIN, ACTING** ) | By: James P. Jones |
| **COMMISSIONER OF SOCIAL** ) | United States District Judge |
| **SECURITY,**[1] ) | |
| ) | |
| Defendant. ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Maija DiDomenico, Assistant Regional Counsel, and Rafael Melendez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Teresa M. Hunley, formerly Teresa L. Morangello, filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Fed. R. Civil P. 25(d).

supplemental security income ("SSI") pursuant to Titles II and XVI, respectively, of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-34, 1381-83f (West 2011, 2012).  Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Hunley protectively applied for benefits on July 22, 2005, alleging disability beginning January 1, 2000.  She met the insured status requirements through December 31, 2003.  Her claim was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") in December 2006, and the ALJ issued a decision on January 31, 2007, finding that Hunley was not disabled.  Hunley requested review by the Social Security Administration's Appeals Council, which denied her request for review.  Hunley filed a complaint in this court seeking judicial review of the Commissioner's decision.  Magistrate Judge Pamela Meade Sargent remanded the case to the Commissioner for further findings.  *Morangello v. Astrue*, No. 2:07CV00038, 2008 WL 901545 (W.D. Va. Apr. 1, 2008).  In the meantime, Hunley filed another application for SSI on February 12, 2007, which was denied by the state agency.  This second SSI application was incorporated with the original it and SSI applications for rehearing.

On August 6, 2008, a second ALJ conducted a hearing, at which Hunley, represented by counsel, and a vocational expert ("VE") testified.  On January 22, 2009, the ALJ issued a decision which again found that Hunley could perform a

range of light work with certain restrictions and thus was not disabled under the Act. Hunley again requested review by the Social Security Administration's Appeals Council. The Appeals Council denied her request for review, thereby making the ALJ's decision the final decision of the Commissioner. Hunley then filed the Complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is now ripe for decision.

II

Hunley alleged disability due to mitral valve prolapse, left ear hearing loss, back pain, right knee problems, asthma, depression, anxiety, and panic attacks. She does not challenge the ALJ's findings with respect to her physical impairments. Therefore, the recitation of the facts will be limited to those related to her mental impairments.

Hunley was 39 years old on the date of the second ALJ's decision, making her a younger individual under the regulations. *See* 20 C.F.R. §§ 404.1563(c); 416.963(c) (2012). She is a high school graduate who completed approximately two years of college and holds a paralegal certificate. She previously worked as a fast food cook, cashier, and assistant manager, but she has not worked since 1998.

Most of Hunley's medical records during the relevant time period reflect treatment for her physical impairments, but the record shows that she did occasionally complain of and receive treatment for anxiety and depression. In December 2003, Deepti Kudyadi, M.D., diagnosed Hunley with a skin condition that he believed was likely caused by anxiety. Hunley told Dr. Kudyadi that she was experiencing stress due to her children being at home with her. Dr. Kudyadi prescribed anti-anxiety medication but indicated that Hunley could taper off of the medication when her children returned to school. In July 2005, Hunley complained to Dr. Kudyadi about chest wall pain associated with panic attacks. She denied suicidal or homicidal ideations, apathy, or anhedonia. She reported that her children and financial situation were causing her stress. Dr. Kudyadi noted no abnormal mental status findings and diagnosed Hunley with generalized anxiety and panic disorder. He prescribed Lexapro and referred Hunley for counseling.

Later that month, Hunley began seeing Kaye Weitzman, a licensed clinical social worker, who noted that Hunley had an anxious mood and short term memory problems, but no obvious depression, abnormality of thought, suicidal or homicidal ideations, or psychosis, and fair insight, judgment, and impulse control. Weitzman diagnosed panic disorder and agoraphobia, and she recommended Buspar to control Hunley's anxiety.

In August 2005, Hunley again complained to Dr. Kudyadi about chest pain, but she denied stress and emotional problems and reported that her home life was stable. Dr. Kudyadi made no mental diagnosis and noted that Hunley had not experienced anxiety symptoms in quite some time, although she appeared anxious.

Hunley also visited Lawrence Fleenor, M.D., in August 2005, who diagnosed her with agoraphobia with panic disorder and adjusted her medication.

In September 2005, Weitzman noted that Hunley was tired and anxious but did not appear depressed. Weitzman adjusted Hunley's medications. Later that month, Teresa Ellis, a nurse practitioner, reported that Hunley appeared quite anxious and opined that Lexapro may have been exacerbating her anxiety symptoms. Ellis discontinued Lexapro and recommended beginning Doxepin, a different anti-depressant.

In November 2006, at the request of her attorney, Hunley met with Robert Spangler, Ed.D., a licensed psychologist, who conducted a psychological evaluation. Dr. Spangler observed a generally slow activity level and erratic concentration secondary to depression and physical discomfort. Hunley reported that she developed depression when she learned that her estranged husband was living with another woman, and he threatened to stop paying child support if she divorced him. She indicated that she had been seeing a counselor only once every six weeks and had been complying with her medication regimen. Hunley indicated

that she had more good days than bad days.  Dr. Spangler noted that Hunley was alert and oriented, had adequate recall of remote and recent events, displayed an appropriate affect, and was cooperative, compliant, and forthcoming, but had a depressed mood.  Dr. Spangler indicated that Hunley had adequate social skills and related well with the examiner.  Dr. Spangler diagnosed depressive disorder, low average intelligence, and erratic concentration, and he assigned Hunley a Global Assessment of Functioning ("GAF") score of 55-60.  He completed a Medical Assessment of Ability to do Work-Related Activities (Mental), in which he opined that Hunley had good ability to follow work rules, use judgment, function independently, maintain personal appearance, and understand, remember, and carry out simple job instructions; good to fair ability to relate to coworkers, deal with the public, interact with supervisors, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations; and fair ability to deal with work stresses, demonstrate reliability, and understand, remember, and carry out detailed, but not complex, instructions; and poor to no ability to understand, remember, and carry out complex job instructions.  Dr. Spangler stated that Hunley would likely miss an average of one day of work per month due to her mental impairments.

  Hunley began treatment with Jill Couch, M.D., in January 2007 for treatment of her physical and mental conditions.  Hunley complained of depression

and anxiety, and Dr. Couch adjusted her medications. By March 2007, Hunley reported that she was doing much better on her new medication and that her energy level, appetite, and interest in doing things had all improved. In June 2007, Hunley again complained of increased anxiety, but Dr. Couch made no changes to her medicine regimen. From January through June 2007, Dr. Couch consistently noted that Hunley appeared alert and oriented, pleasant, and looked well, and Hunley consistently denied suicidal or homicidal ideations. Dr. Couch completed a medical evaluation form in which she opined that Hunley would be unable to work for 60 to 90 days due to a physical impairment and secondarily due to anxiety and depression. On the form, Dr. Couch identified only physical limitations.

In August 2007, Hunley presented to Bristol Regional Medical Center and was voluntarily admitted due to depression and suicidal ideation. The record reveals that she was experiencing several significant personal and financial stressors that precipitated this episode. On August 22, 2007, Ashvin A. Patel, M.D., assigned Hunley a GAF score of 25.[2] By the time she was discharged on August 24, 2007, however, Hunley reported that she was feeling less depressed,

---

[2] A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social or occupational functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

and her GAF score had increased to 60.  She was diagnosed with major depressive disorder, and her discharge medications included Klonopin, Trileptal, and Effexor.

Following her discharge, Hunley began treatment with psychiatrist Uzma Ehtesham, M.D., who diagnosed major depressive disorder, possible bipolar disorder, and generalized anxiety disorder.  Dr. Ehtesham prescribed various anti-anxiety and anti-depressant medications.  She assigned Hunley GAF scores of 60 and noted on one occasion that Hunley was doing fairly well.  Nevertheless, Dr. Ehtesham completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) in which she opined that Hunley had no useful ability to respond appropriately to usual work situations and changes in a routine work setting or to interact appropriately with supervisors or coworkers.  Dr. Ehtesham further opined that Hunley was seriously limited in her ability to interact appropriately with the public and was permanently disabled.

Regarding her activities of daily living, Hunley reported that she provided basic care for her two children, transported them to and from school, prepared meals daily, independently cared for her personal hygiene, spent three days per week cleaning her home and washing clothes, and shopped for food and household goods monthly.  She further reported that she was able to manage her finances and could leave her home by herself.  She reported no problems getting along with family, friends, neighbors, or authority figures; following instructions; or handling

changes in routine. She reported that she had stopped working when her father had open heart surgery, and she had begun caring for her children because she did not want her father to watch them.

Between September 2005 and October 2007, three psychologists reviewed the record at the request of the state agency. Based on the information then in the record, all of these psychologists opined that Hunley's depression and anxiety were not severe.

At the second hearing, the ALJ posed a hypothetical to the VE that included the limitations of only simple, non-complex tasks and no working with the public, along with a number of physical limitations. The VE testified that a person with the stated limitations could perform unskilled, light work existing in significant numbers in the national economy, including the positions of clerical worker and product grader/sorter. The VE further indicated that none of the limitations that Dr. Spangler had identified in his assessment would preclude Hunley from working.

The ALJ found that Hunley had medically determinable severe impairments, but that she did not have any impairments that met or medically equaled any listed impairments. The ALJ found that Hunley retained the residual functional capacity ("RFC") to perform a limited range of light work with certain restrictions, including that she could perform only simple, non-complex tasks and could not

work with the public. The ALJ determined that Hunley could not perform any of her past relevant work, but that she could perform other work that exists in substantial numbers in the national economy, and thus had not proved that she was disabled under the Act.

Hunley contends that the ALJ erred by not specifically identifying which of her impairments were severe. She further asserts that the ALJ's decision is unsupported by substantial evidence because the ALJ failed to properly credit Dr. Spangler's mental assessment. The Commissioner disagrees and argues that the ALJ's decision is compliant with the applicable law and supported by substantial evidence.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

I must review the denial of benefits under the Act to ensure that the ALJ's findings of fact "are supported by substantial evidence and [that] the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). I must not reweigh the evidence or make credibility determinations because those functions are left to the ALJ. *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the

responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks and citation omitted).

Hunley first asks me to remand this case to the Commissioner once again because the ALJ did not specifically identify which of Hunley's impairments were severe. While Hunley is correct that the ALJ's decision does not clearly state which impairments she found to be severe, this is harmless error. One can infer from the ALJ's decision that she found all of Hunley's impairments to be severe, as she went on to explain why none of them met or medically equaled a listed impairment. The ALJ would not have proceeded to step three of the five-step analytical process for impairments that she had not found to be severe at step two. The lack of a specific statement as to which impairments were severe does not provide a sufficient basis for remanding this case a second time.

Hunley also argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not adequately address Dr. Spangler's assessment. The ALJ explained that she gave little weight to Dr. Spangler's assessment because it was prepared after just one visit and without the benefit of longitudinal observation. Moreover, Dr. Spangler's opinion was not supported by other medical evidence of record, including observations and assessments by her treating sources. The record revealed that, with the exception of one voluntary hospitalization due to stressors in her personal life, Hunley generally experienced

only moderate symptoms or functional restrictions due to her mental impairments and usually received GAF scores of 60 or higher. According to the record, her medications seemed to control her depression and anxiety symptoms, and she was able to care for herself and her children with little to no assistance. The record as a whole supports the ALJ's RFC finding.

The ALJ carefully considered and weighed all of the medical evidence presented. Based on my review of the record, I conclude that the ALJ's decision was supported by substantial evidence, and it will be affirmed.


IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence. The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   May 10, 2013

/s/  James P. Jones
United States District Judge